Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 1100
Dallas, Texas 75251
Ph. (972) 991-5591
Fax (972) 991-5788

ATTORNEY FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| VEGAS METALS RECYCLING, INC. | § | |
| | § | Case no. 09-46716-DML-11 |
| | § | |
| DEBTOR | § | |

PLAN OF REORGANIZATION OF VEGAS METALS RECYCLING, INC. PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DATED APRIL 20, 2010

TO:   ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COME NOW, Vegas Metals Recycling, Inc., Debtor and Debtor-out- of-Possession in the above-referenced bankruptcy cases, and proposes the following Plan of Reorganization ("Plan"). The Plan proposes segregation of the Creditors and Equity Interest Holders of the Debtor into 6 separate classes.

## ARTICLE I
**DEFINITIONS**

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan and in the accompanying Disclosure Statement, which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1. "**Administrative Claim**" shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2. "**Allowed Claim**" as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3. "**Allowed Secured Claim**" shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

4. "**Allowed Unsecured Claim**" shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5. "**Bar Date**" shall mean March 1, 2010 other than Administrative and Priority Claims or Rejection Claims.

6. "**Case**" shall mean this Chapter 11 case.

7. "**Claim**" shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

8. "**Claimant**" shall mean the holder of a Claim.

9. "**Class**" shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

10. "**Code**" shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

11. "**Confirmation**" or "**Confirmation of this Plan**" shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

12. "**Confirmation Date**" shall mean the date on which the Court enters an Order confirming this Plan.

13. "**Court**" shall mean the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, presiding over these Chapter 11 reorganization cases, or any successor court of competent jurisdiction.

14. "**Creditor**" shall mean any person having a Claim against Debtor.

15. "**Debt**" shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

16. "**Debtor**" shall mean Vegas Metals Recycling, Inc. and the Debtor in the above-styled and numbered case.

17. "**Disbursing Agent**" shall mean the Reorganized Debtor.

18. "**Effective Date**" shall mean thirty days after the Final Confirmation Date.

19. "**Entity**" shall include Person, estate trust, governmental unit and the United States Trustee.

20. "**Equity Interest Holders**" shall mean holders of the equity interests in the Debtors.

21. "**Final Confirmation**" shall mean that date which is eleven (11) days following the entry of the Order Confirming Plan, during which period of time no Notice of Appeal is filed, or if a Notice of Appeal is filed, during which period of time no Motion for Stay Pending Appeal is granted or supersedeas bond is approved and filed.

22. "**Order Confirming Plan**" shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

23. "**Petition Date**" shall mean the date on which the Debtor filed this proceeding, October 26, 2009.

24. "**Plan**" shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

25. "**Priority Claim**" shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

26. "**Rejection Claim**" shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

27. "**Reorganized Debtor**" shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

28. "**Secured Claim**" shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

29. "**Substantial Consummation**" shall occur upon Reorganized Debtor's commencement of payments to creditors as provided in this Plan.

30. "**Tax Claims**" shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

31. "**Unsecured Claim**" shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

## ARTICLE 2
## CERTAIN GENERAL TERMS AND CONDITIONS

The following general terms and conditions apply to this Plan:

2.1 Claims and Debts: Various types of Claims and Debts are defined in this Plan. This Plan is intended to deal with all Claims and Debts against the Debtor of whatever character whether or not contingent or liquidated and whether or not allowed by the Court pursuant to Section 502(a) of the Code and all Claims and Debts will receive the treatment afforded in Articles of this Plan. Claims and Debts incurred by the Debtor post-petition, including ad valorem taxes, in the ordinary course of business will be paid by the Debtor according to their terms as they come due.

2.2 **Securities Laws**: The issuance of any security in satisfaction of indebtedness under this Plan may be exempt from registration under certain State and Federal securities laws by virtue of Section 1145 of the Code and the exemption therein contained.

2.3 **Time for Filing Claims**: With respect to those Claims that have been identified in the Schedules filed pursuant to Section 521(1) of the Code and which have been scheduled as

"disputed," "contingent," or "unliquidated," said Claimants must file a proof of claim bearing the case number of the above-styled and referenced proceeding with the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, on or before the Bar Date to participate under this Plan. Claims scheduled as disputed, contingent, or unliquidated filed after the Bar Date shall not be allowed, and shall not participate in the distributions contemplated by this Plan. Claims arising from rejection of a lease or executory contract and administrative claims shall be filed with the Court within thirty (30) days following the Confirmation Date of this Plan.

2.4 **Modifications to Plan**: In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified upon application of Debtor or corrected prior to Confirmation without notice and hearing and without additional disclosure pursuant to Section 1125 of the Code provided that, after hearing on and notice to the creditors, the Court finds that such modification does not materially or adversely affect any Creditor or Class of Creditor.

## ARTICLE 3
## TREATMENT OF UNCLASSIFIED CLAIMS
## (CERTAIN ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS)

3.1 All trade and service debts and obligations, including ad valorem taxes for year 2010, incurred in the normal course of business by the Debtor on or after the Petition Date will be paid when due in the ordinary course of the Debtor's business unless a different time for payment is specified in this Plan.

3.2 Each governmental unit holding a post-petition Claim arising out of taxes assessed against property of the estate, also including "ad valorem property taxes," but limited as provided by Section 502(b)(3) of the Code, shall be paid in full when said Claims are due.

## ARTICLE 4
## DIVISION OF CREDITORS INTO CLASSES

4.1 Classification of Claims: This Classification of Claims is made for purposes of voting on this Plan, making distributions thereunder, and for ease of administration thereof. Unless specifically provided otherwise herein, on the Confirmation Date this Plan discharges and extinguishes all Claims and Debts against the Debtor of whatever character, whether allowed by the Court or otherwise.

4.2 **Class 1**: Consists of **Allowed Administrative Claims Attorney fees and US Trustee Fees** (Not Impaired)
**Class 2**: Consists of **Allowed Tax Claims** (Impaired)
**Class 3**: Consists of **Allowed Secured Claim of Commercial Credit Group** (Impaired)
**Class 4**: Consists of **Allowed Claim of McQuerry properties** (Impaired)
**Class 5**: Consists of **Allowed Unsecured Claims** (Impaired)

**Class 6**: Consists of **Allowed Equity Interest Holder Claims**. (Not Impaired)

## ARTICLE 5
## TREATMENT OF CLASSES

5.1 <u>Satisfaction of Claims and Debts</u>: The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article of this Plan shall be in full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtor subject to the provisions herein. On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities and obligations for the implementation of this Plan.

5.2 **Class 1 Claimants (Allowed Administrative Claims of Professionals and US Trustee)** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to the law firm of Randy Taub and any professional fees approved for the law firm if Eric A. Liepins, P.C. will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. Additionally, as a result of the appointment of a Chapter 11 Trustee certain Chapter 11 Trustee fees will be incurred as Administrative expenses, and to the extent the Chapter 11 Trustee hires counsel with approved fees, those fees will be treated as Administrative Expenses. This case will not be closed until all allowed Administrative Claims are paid in full. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $25,000 including Section 1930 fees. Section 1930 fees shall be paid in full prior to the Effective Date. The Debtor is required to continue to make quarterly payments to the U.S. Trustee and maybe required to file post-confirmation operating reports until this case is closed. The Class 1 Claimants are not impaired under this Plan.

5.3 **Class 2 Claimants** (**Allowed Tax Claims**) are impaired and shall be satisfied as follows: The Allowed Priority Amount of all Tax Creditor Claims shall be paid out of the revenue from the continued operations of the business. The Allowed Claim of Tarrant County and the City of Fort Worth shall will be satisfied by being paid in full with interest at a rate of 12% per annum. Tarrant County has filed a Proof of Claim in the amount of $6,333.72 and the City of Fort Worth has filed a Proof of Claim in the amount of $271.53. The Ad Valorem Taxes will receive post-petition pre-confirmation interest at the state statutory rate of 12% per annum and post-confirmation interest at the rate of 12% per annum. The Debtor will pay the Ad Valorem Taxes over a period of 12 months from the Effective Date, commencing on the Effective Date. The Debtor's total monthly payment to pay the Tarrant County Taxes will be approximately $562.68 and monthly payment to pay the City of Fort Worth Taxes will be approximately $24.08. The Debtor reserves the right to pre-pay any Class 2 creditor. The Taxing Authorities shall retain their statutory senior lien position regardless of other Plan provisions, if any, to secure their Tax Claims until paid in full as called for by this Plan.

Class 2 Claimants are impaired under this Plan

5.4 **Class 3 Claimants (Allowed Secured Claim of Commercial Credit Group)** is impaired and shall be satisfied as follows: Commercial Credit Group ("BOT") maintains a lien position on certain property of the Debtor including accounts receivable, inventory and equipment. On or about February 24, 2009 the Debtor executed a promissory Note in favor of CCG in the

original principal amount of $324,534. On or about March 12, 2009 the Debtor executed a Promissory Note in favor of CCG in the original principal amount of $180,894. On or about April 15, 2009 the Debtor executed a Promissory Note in favor of CCG in the original principal amount of $74,718 (Collectively hereinafter referred to as the "Notes"). The Debtor made payments on the Notes prior to the bankruptcy filing. The Debtor has listed the debt owing to CCG on the Notes in the amount of $371,368. CCG has not filed a Proof of Claim in the case. The Debtor shall restructure the Notes to CCG into one new note in the amount scheduled of $371,368 with interest at a rate of prime rate plus 2% per annum[1] in 120 equal monthly payments of $7,050.79.[2] The Debtor shall have the right to pre-pay the new CCG note at any time without penalty. CCG shall retain its liens on the property of Debtor until paid in full under the terms of this Plan. The Class 3 Claimant is impaired under this Plan.

     5.5    **Class 4 Claimants (Allowed Claims of McQuerry Properties)** is impaired and shall be satisfied as follows: McQuerry Properties ("McQuerry") is the Debtor's landlord. The Debtor maintain 5 properties rented from McQuerry. At the time of the filing the Debtor was delinquent to McQuerry on rent in the amount of approximately $50,000. The Debtor shall assumes its current leases with McQuerry and the Debtor shall cure all outstanding delinquency by making 12 equal payments to McQuerry commencing on the effective Date. The payments shall be approximately $4,166 per month. Class 4 is impaired under this Plan.

     5.6    **Class 5 Claimant (Allowed Claims of Unsecured Creditors )** are impaired and shall be satisfied as follows: The Allowed claims of Unsecured Creditors will share pro-rata in the Unsecured Creditor's Pool. The Debtor shall pay $2,500 per month commencing on the Effective Date until all unsecured creditors are paid in full. Based upon the Debtor's Schedules, the Debtor projects the Unsecured Creditors will be paid in 24 months[3]. The Class 5 creditors are impaired under this Plan.

     5.7    **Class 6 (Current Shareholders)** are not impaired under the Plan and shall be satisfied as follows: The current shareholders will receive no payments under the Plan, and the current shareholders shall retain their existing interests. The Class 6 shareholders are not impaired under this Plan.

---

[1] The rate shall be adjusted on the anniversary of the Effective Date of th Plan over the life of the Plan. The Prime Rate shall be US Prime Rate published in Wall Street Journal on the anniversaries of the Effective Date.

[2] Subject to annual adjustments.

[3] The Schedules list $99,000 in unsecured claims however this amount contains $44,000 in claims of McQuerry which will be treated as Class 4 claims.

# ARTICLE 6
# MEANS FOR EXECUTION OF THE PLAN

    6.1    **Action to be taken:** Any actions required to be taken by the Debtor on the Effective Date may be taken by the Debtor before the Effective Date or immediately following the date of Final Confirmation.

    6.2    **Ongoing Operations:** The Debtor's obligations under this Plan will be satisfied out of the ongoing operations of the Reorganized Debtor. The income projections of the Reorganized Debtor are attached to the Disclosure Statement. The Debtor believes the projections to be accurate based upon current sales levels and commitments as well as future prospects for business. The Debtor does not intent to dramatically alter the current expenses and has projected only moderate growth over the Plan term.

    6.3    Notwithstanding anything contained herein, the Reorganized Debtor shall have the right to request the Court to disallow any claim of any Entity from which property is recoverable under Sections 542, 543, 550, and 553 of title 11, or that is a transferee of a transfer avoidable under Sections 544, 545, 548, or 549 of title 11 unless such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable.

# ARTICLE 7
# SECTION 1129(b)(2)

    7.1    The Court may confirm this Plan even though less than all of the Classes of Claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code. Accordingly, Debtor, as the plan proponent, requests the Court to determine that this Plan does not discriminate unfairly, and is fair and equitable with respect to the rejecting creditor.

# ARTICLE 8
# STATUS OF EXECUTORY CONTRACTS

    8.1    All unexpired leases and executory contracts shall be assumed on or before the Effective Date. To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan prior to the Effective Date, they are rejected. The lease claims of McQuerry Properties are specifically assumed under the terms of this Plan.

# ARTICLE 9
# EVENTS OF DEFAULT AND EFFECT THEREOF

    9.1    In the event that Substantial Consummation of this Plan does not occur on or before the earlier of the Effective Date or 71 days after the Confirmation Date, the Order of Confirmation may be vacated by any party in interest, other than the Debtor.

    9.2    Unless expressly provided herein to the contrary, no Claimant shall have the right

to enforce any rights under this Plan until the Reorganized Debtor fails to cure any default hereunder within thirty (30) days of receipt of written notice of such default to Reorganized Debtor

9.3.     Default shall occur if one scheduled Plan payment is not made by Debtor or if current taxes are not timely paid pursuant to state law. In the event of default, any party in interest who has not received their required payment, shall send written notice of default as set forth in section 9.2 above. Any notice of default sent by ad valorem taxing authorities, under the Plan may be sent via facsimile to David Vega 817-740-8674. In the event the default of payment to the ad valorem taxing authorities is not cured within twenty (20) days of the date of the facsimile, ad valorem taxing authorities may proceed to collect all amounts owed pursuant to state law outside of the Bankruptcy Court. The ad valorem taxing authorities shall not be required to give more than two notices of default. Upon the third event of default, the ad valorem taxing authorities shall be able to collect all amounts pursuant to state law outside of the Bankruptcy Court. Notwithstanding anything in this Plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to any tax claims except for (i) resolving the amount of any such tax claim arising prior to confirmation, and (ii) enforcing the discharge provision of the Plan.

## ARTICLE 10
## DISCHARGE

10.1    Upon Confirmation, to the extent that a Claim or Debt has not been dealt with under this Plan, such Claim or Debt will be released.

10.2    The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

10.3    NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, NEITHER DEBTOR, REORGANIZED DEBTOR, GUARANTORS, THE OFFICERS AND DIRECTORS OF THE DEBTORS NOR THE PARTNERS SHALL BE DISCHARGED AND RELEASED FROM ANY LIABILITY FOR CLAIMS  UNDER THIS PLAN, HOWEVER, THE EXCLUSIVE REMEDY FOR PAYMENT OF ANY CLAIM SO LONG AS THE PLAN IS NOT IN DEFAULT SHALL BE THE PLAN.

## ARTICLE 11
## AMENDMENTS TO THE PLAN

11.1    Debtor may modify this Plan following Confirmation and before Substantial Consummation to the extent consistent with the requirements of section 1122 and 1123 of Title 11.  The Plan as modified becomes the Plan if circumstances warrant modification and the Court approves of such modifications.

11.2    In the event of modification of this Plan pursuant to Section 11.1, any holder of a Claim or interest that has accepted or rejected this Plan is deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within ten (10) days of service of the Plan

modifications upon such holder, such holder changes its previous acceptance or rejection.

## ARTICLE 12
## EFFECT OF CONFIRMATION

    12.1    The provisions of this Plan bind Debtor, any Entity issuing securities under this Plan, any Entity acquiring property under this Plan, and any Creditor or Equity Interest Holder, whether or not the Claim or interest of such Creditor or Equity Interest Holder is impaired under the Plan and whether or not such Creditor or Equity Interest Holder has accepted this Plan.

    12.2    All property of the estate shall vest in the Reorganized Debtor upon Final Confirmation.

    12.3    All property of the Reorganized Debtor is free and clear of all Claims and interests of Creditors and Equity Interest Holders, except as to claims, secured claims or secured debentures and interests specifically granted in this Plan.

    12.4    All Debts that arose before the Confirmation Date and any Debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Code, whether or not a proof of claim based on such Debt is filed or deemed filed under Section 501, whether or not such Claim is allowed under Section 502; and whether or not the holder of such Claim has accepted this Plan; are, fully and finally satisfied by this Plan.

## ARTICLE 13
## MISCELLANEOUS PROVISIONS

    13.1    The obligations under this Plan to any particular Claim are governed by the laws of the State constituting the situs of the Debt represented by that particular Claim described in this Plan.

    13.2    Equity Interest Holders are relieved from all liability, obligation or duty to initiate or pursue any causes of action of Debtor against any Entity.

    13.3    Any caption herein is for convenience only and does not affect the construction of the Plan.

    13.4    Any distribution pursuant to this Plan which remains unclaimed for a period of six (6) months from the due date of such distribution is forfeited.

## ARTICLE 14
## RETENTION OF JURISDICTION

Until this case is closed, the Court retains jurisdiction of the following matters only:

    14.1    To direct any necessary party to execute or deliver or to join in the execution or

delivery of any instrument required to effect a Transfer of property dealt with by the Plan and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan.

  14.2 To allow or disallow Claims.

  14.3 To hear and determine all Claims arising from the rejection of executory contracts and unexpired leases which are included in Debtor's estate and to consummate rejection and termination thereof in connection with Debtor's estate and/or implementation of the Plan.

  14.4 To liquidate damages or estimate Claims in connection with any disputed, contingent or unliquidated Claims.

  14.5 To adjudicate all Claims to an ownership interest in any property of Debtor's estate.

  14.6 To recover all assets and properties, including by lawsuit, of Debtor's estate wherever located.

  14.7 To hear and determine Claims concerning Federal, State and local taxes pursuant to Section 346, 505, 525 and 1146 of the Code.

  14.8 To hear and determine any action or proceeding brought by Debtor or the Reorganized Debtor under Section 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, whether such action or proceeding is brought before or after the Effective Date.

  14.9 To hear and determine any core proceeding, whether such proceeding is brought before or after the Effective Date.

  14.10 To determine the validity, extent and priority of all Liens and security interests against property of Debtor's estate.

  14.11 To consider any modification of this Plan under Section 1127 of the Code or under Bankruptcy Rule 3020 and/or modification of this Plan after Substantial Consummation as defined herein.

  14.12 To hear and determine all requests for compensation and/or reimbursement of expenses of professionals.

  14.13 To hear and determine Reorganized Debtor's requests for orders as are consistent with this Plan as may be necessary or desirable to carry out the provisions thereof.

  14.14 To enter an order closing this case. The Debtor shall attempt to close the case within 6 months of the Effective Date.

Respectfully submitted,

Vegas Metals Recycling, Inc.

 /s/ David Vega
By: David Vega
Its: President


ERIC LIEPINS, P.C.
ERIC LIEPINS
12770 Coit Road
Suite 1100
Dallas, Texas 75251
(972)991-5591
(972) 991-5788 - telecopier

DEBTOR 'S PLAN OF REORGANIZATION DATED APRIL 20 , 2010 - Page 12
mic\plan